IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

THE GUARANTEE COMPANY OF NORTH
AMERICA,

    Plaintiff,

vs.

GARY'S GRADING & PIPELINE CO.,
INC., *et al.*,

    Defendants.

\*
\*
\*
\*
\*
\*
\*

CASE NO. 3:15-CV-83 (CDL)

O R D E R

    This action arises from a construction company's failure to complete various projects which required its surety to step in and make payments under its payment and performance bonds.  That surety, The Guarantee Company of North America ("Guarantee Co."), sues the construction company, Gary's Grading & Pipeline Co., Inc. ("Gary's Grading"), along with other related entities, CGP Equipment Company, Inc. ("CGP Equipment"), Bold Springs, LLC ("Bold Springs"), Pine Plantation, LLC ("Pine Plantation"), and individuals, Gary Opolka and Christopher Opolka.  Guarantee Co. claims that Gary Opolka and Christopher Opolka signed an Indemnity Agreement to repay Guarantee Co. for any payments it made on the surety bonds.  Guarantee Co. also seeks specific performance of a provision in the Indemnity Agreement that requires the indemnitors to provide additional collateral

security under the circumstances presented here. Three of the Defendants, Gary's Grading, CGP Equipment and Bold Springs, never answered Guarantee Co.'s complaint and are therefore in default. And Christopher Opolka has filed for protection under the bankruptcy laws, and thus this action is automatically stayed as to him. Guarantee Co. filed a motion for summary judgment against the defaulting Defendants, Gary's Grading, CGP Equipment, and Bold Springs, and against Pine Plantation, which contends that it is not bound by the Indemnity Agreement (collectively the Court refers to Gary's Grading, CGP Equipment, Bold Springs, and Pine Plantation as "Defendants").[1] The parties agree that a genuine factual dispute exists as to the claims against Gary Opolka, and therefore, Guarantee Co. does not seek summary judgment on its claims against him.

For the following reasons, the Court grants in part and denies in part Guarantee Co.'s motion (ECF No. 42), finding that (1) Defendants breached the Indemnity Agreement and are liable

---

[1] To be precise, Guarantee Co. should be seeking a default judgment, not summary judgment, as to the defaulting Defendants, and therefore, the Court treats Guarantee Co.'s motion for summary judgment against the defaulting Defendants as a motion for default judgment. Guarantee Co.'s factual allegations against the defaulting Defendants are deemed admitted due to their failure to answer the complaint. Thus, their liability is already established. Since the damages are not liquidated, however, Guarantee Co. must prove those damages with reasonable certainty to the Court's satisfaction. While this standard is different from the summary judgment standard that Guarantee Co. must satisfy to obtain judgment against Pine Plantation, which is not in default, the weakness in Guarantee Co.'s damages evidence, as described in today's Order, applies equally to Guarantee Co.'s claims against all Defendants.

for any damages caused by the breach; (2) Guarantee Co. failed to establish the amount of its damages as a matter of law; and (3) Defendants are required to provide additional collateral security in the amount of $1,133,371.99.

STANDARDS

Default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," Fed. R. Civ. P. 55(a), and "there is 'a sufficient basis in the [record] for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact . . . ." *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant

or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

When viewed in the light most favorable to Pine Plantation, the facts are as follows:

**I.    The Parties**

Plaintiff Guarantee Co. is a Michigan surety company that issues payment and performance bonds on construction projects. At times relevant to this action, Gary's Grading was a Georgia construction company primarily operated by Christopher Opolka. Defs.' Resp. in Opp'n to Prelim. Inj. Attach. 2, Gary Opolka Aff. I ¶ 3, Oct. 28, 2015, ECF No. 27-2.  Defendant Pine Plantation, a Georgia limited liability company, was co-owned and co-managed by Christopher Opolka and his two brothers, Gary Opolka and Peter Opolka, Jr.  *Id.* ¶¶ 4 & 5; Def.'s Surreply in Opp'n to Pl.'s Mot. for Summ. J. Attach. 1, Peter Opolka, Jr. Aff. ¶¶ 2 & 3, ECF No. 53-1.  Defendants CGP Equipment and Bold Springs are also Georgia entities.

The Pine Plantation Operating Agreement that governs the division of authority between the brothers provides:

> At any time when there is more than one Manager, no
> one Manager may take any action permitted to be taken
> by the Managers without agreement of the other Manager
> or Managers, or unless other approval requirements of

the Managers are expressly set forth elsewhere in this
Operating Agreement or the Georgia Act.

Pl.'s Mot. for Summ. J. Ex. C, Operating Agreement art. V
§ 5.01, ECF No. 42-5.

## II.  The Gary's Grading Bonds

In 2012, Guarantee Co. contracted with Gary's Grading to
provide payment and performance bonds for several construction
projects in Georgia.  In exchange for the Gary's Grading bonds,
Christopher Opolka signed a General Agreement of Indemnification
("Indemnity Agreement") in favor of Guarantee Co. on behalf of
himself, CGP Equipment, Bold Springs and Pine Plantation.  Pl.'s
Mot. for Prelim. Inj. Ex. 1, Indemnity Agreement 6-7, ECF No.
22-1.  Gary Opolka's signature also appears on the Indemnity
Agreement on behalf of himself and Gary's Grading.  *Id.*
According to Gary Opolka, however, he did not sign the Agreement
and he did not give Christopher Opolka permission to sign the
Agreement on behalf of their co-managed entity Pine Plantation.
Gary Opolka Aff. I ¶¶ 8 & 9.  Gary Opolka believes that
Christopher Opolka forged his signature on the Agreement.  *Id.*

John Redding, the Guarantee Co. employee responsible for
issuing the Gary's Grading bonds in 2012, believed that all the
signatures on the Indemnity Agreement were genuine.  Redding
states that he "had no reason to distrust the authenticity of
the notarized signature[] of Gary Opolka."  Pl.'s Reply in Supp.

of Summ. J. Ex. A, Redding Aff. ¶ 12, ECF No. 50-1.  Redding also had no concerns "as to Chris Opolka's authority to sign the Indemnity Agreement on behalf of Pine Plantation." *Id.* at ¶ 11.

**III. Terms of the Indemnity Agreement**

The Indemnity Agreement provides the following indemnity provision:

> The UNDERSIGNED shall indemnify [Guarantee Co.] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which [Guarantee Co.] may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement.

Indemnity Agreement ¶ 4.  The Indemnity Agreement also gives Guarantee Co. the right to settle any claims against the bonds:

> [Guarantee Co.] may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED.  Vouchers or other evidence of payments made by [Guarantee Co.] shall be prima facie evidence of the fact and amount of the liability of the UNDERSIGNED to [Guarantee Co.].

*Id.* ¶ 7.  And it contains a collateral security provision:

> Upon [Guarantee Co.]'s reasonable belief that it may incur a loss on a BOND or BONDS, [Guarantee Co.] may demand and, upon [Guarantee Co.]'s demand, the UNDERSIGNED shall deliver over to [Guarantee Co.] collateral security acceptable to [Guarantee Co.] to cover any contingent losses and any subsequent increase thereof.  {Guarantee Co.} shall return to the

> UNDERSIGNED any unused portion of collateral upon termination of the liability of [Guarantee Co.] on all BONDS and satisfaction by the UNDERSIGNED of [their] obligations to [Guarantee Co.] under this Agreement.

*Id.* ¶ 5.

## IV.   Guarantee Co.'s Damages and Claims

Several of the subcontractors and suppliers for Gary's Grading submitted claims to Guarantee Co. against the Gary's Grading bonds.  Christina Zabek is the Guarantee Co. employee assigned to manage the Gary's Grading bond claims.  She states that to date Guarantee Co. has paid $2,865,073.92 in settlements on the bond claims.  Pl.'s Mot. for Summ. J. Ex. A, Zabek Aff. ¶ 13, ECF No. 42-2.  Zabek bases this calculation on Guarantee Co.'s records, which Guarantee Co. attaches as Exhibit 4 to Zabek's affidavit.  Zabek claims that Exhibit 4 "comes from business records maintained by or on behalf of [Guarantee Co.], to memorialize payments that [Guarantee Co.] made," and "contains copies of information kept in the course of regularly conducted business activity by or on behalf of [Guarantee Co.], and it is the regular practice to make these records."  *Id.* ¶¶ 14 & 15.

Zabek also states that Guarantee Co.'s books, accounts, and records indicate that its potential future loss exposure is $1,133,371.99.  *Id.* ¶ 16.  Since receiving the bond claims, Guarantee Co. demanded that Defendants indemnify it for its

losses and post collateral pursuant to the Indemnity Agreement. Defendants have failed to indemnify Guarantee Co. or post collateral.

Guarantee Co. filed this action against Defendants based on diversity jurisdiction, seeking $2,865,073.92 in damages for breach of the indemnity provision and specific performance requiring Defendants to post $1,133,371.99 in collateral for breach of the collateral security provision. Guarantee Co. also asks the Court to maintain jurisdiction over the case until all claims against the Gary's Grading bonds are settled and to order additional damages if appropriate.

DISCUSSION

Three of the Defendants, Gary's Grading, CGP Equipment and Bold Springs, are in default. Guarantee Co.'s factual allegations establish that the defaulting Defendants breached the Indemnity Agreement as a matter of law. Therefore, the only issue that remains as to their liability is the amount of damages. Guarantee Co. relies on the same damages evidence in support of its default judgment against these defaulting Defendants that it relies on in support of its motion for summary judgment against Pine Plantation. Therefore, the Court will first evaluate Pine Plantation's liability. The Court will then consider Guarantee Co.'s remedies against all Defendants.

## I.   Summary Judgment on Pine Plantation's Liability

On the issue of Pine Plantation's liability, the first question is what law to apply.  When subject matter jurisdiction is based on diversity, the Court applies the forum state's choice-of-law rules to determine which law governs the action. *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996).  Under Georgia's choice-of-law rules, "[contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they are made . . . ." *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984) (first alteration in original) (quoting *Tillman v. Gibson*, 44 Ga. App. 440, 442-43, 161 S.E.2d 630, 632 (1931)).  Here, there is no indication that the Indemnity Agreement was made in a state other than Georgia, "and the parties seem to agree that substantive Georgia law applies because almost all of the cases cited in their briefs discuss Georgia law." *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 669 (11th Cir. 2012) (per curiam). Accordingly, the Court applies Georgia law.

### A.   Pine Plantation is Bound by the Indemnity Agreement

It is well established under Georgia law that "an act done by an agent in excess of his authority does not bind the principal . . . ." *Gaulding v. Courts*, 90 Ga. App. 472, 480, 83 S.E.2d 288, 294 (1954).  Here, Pine Plantation argues that

Christopher Opolka exceeded his authority by signing the Indemnity Agreement on its behalf and, therefore, that Pine Plantation is not bound by the Agreement. Guarantee Co. responds that Christopher Opolka had actual authority to bind Pine Plantation to the Indemnity Agreement, and even if he did not have actual authority, he certainly acted with apparent authority.

The Pine Plantation Operating Agreement provides that one co-manager may not unilaterally bind Pine Plantation "without agreement of the other Manager or Managers, *or unless other approval requirements of the Managers are expressly set forth elsewhere in this Operating Agreement or the Georgia Act*." Operating Agreement art. V § 5.01 (emphasis added). Pine Plantation ignores the phrase beginning with "unless" and argues that Pine Plantation can only be bound if all the managers concur. This interpretation disregards the plain language of the agreement which provides that all managers must agree, "unless . . . other approval requirements are expressly set forth in . . . the Georgia Act." "The Georgia Act" clearly refers to the Georgia Limited Liability Company Act. *Id.* art. I, at 3 (defining "Georgia Act" as the "Georgia Limited Liability Company Act"). And that Act provides that every manager of an LLC is an agent of the LLC with a limited exception if two requirements are met:

> Every manager is an agent of the limited liability
> company for the purpose of its business and affairs,
> and the act of any manager, including, but not limited
> to, the execution in the name of the limited liability
> company of any instrument for apparently carrying on
> in the usual way the business and affairs of the
> limited liability company of which he or she is a
> manager, binds the limited liability company, unless
> the manager so acting has in fact no authority to act
> for the limited liability company in the particular
> matter, and the person with whom he or she is dealing
> has knowledge of the fact that the manager has no such
> authority.

O.C.G.A. § 14-11-301(b)(2).  The Act also provides:

> No act of a manager or member in contravention of a
> restriction on authority shall bind the limited
> liability company to persons having knowledge of the
> restriction.

O.C.G.A. § 14-11-301(d).

Here, there is no dispute that Christopher Opolka was a manager of Pine Plantation.  Nor does Pine Plantation dispute that Christopher Opolka was "apparently carrying on in the usual way the business and affairs of [Pine Plantation]" when he signed the Indemnity Agreement.  O.C.G.A. § 14-11-301(b)(2). Thus, Pine Plantation is bound under the Act unless: "[1] the manager so acting has in fact no authority to act for the limited liability company in the particular matter, and [2] the person with whom he or she is dealing has knowledge of the fact that the manager has no such authority."  *Id*.

Even if Christopher Opolka had "no authority to act for [Pine Plantation] in [signing the Indemnity Agreement],"

Guarantee Co. presents undisputed evidence that it had no
"knowledge of the fact that [Christopher] ha[d] no such
authority." After reviewing the underwriting documents for the
Gary's Grading bonds in 2012, Guarantee Co. underwriter Redding
had no concerns "as to Chris Opolka's authority to sign the
Indemnity Agreement on behalf of Pine Plantation." Redding Aff.
¶ 11. Redding also "had no reason to distrust the authenticity
of the notarized signature[] of Gary Opolka" on the Indemnity
Agreement. *Id*. ¶ 12. And Redding had never seen Pine
Plantation's Operating Agreement. Def.'s Surreply Attach. 4,
Redding Dep. 80:1-2, ECF No. 53-4. Pine Plantation points to no
evidence from which a reasonable jury could conclude that
Guarantee Co. knew that Christopher Opolka had no authority to
act on behalf of Pine Plantation.

Instead of producing evidence of a factual dispute on
Guarantee Co.'s knowledge, Pine Plantation argues that Guarantee
Co. did not do enough to verify that Christopher had the
requisite authority to act on behalf of Pine Plantation. Pine
Plantation presumably maintains that Guarantee Co. should have
asked to review the Operating Agreement. But Guarantee Co. had
no reason to do so. It had been dealing with Christopher Opolka
with no indication that he did not possess the authority to act
on behalf of Pine Plantation. While a review of the Operating
Agreement may have created some concern, the Agreement also

12

provided that the agreement of all the managers was not the exclusive means for Pine Plantation to act given the language in the Agreement that makes an exception if the Georgia LLC Act provides otherwise.   To invalidate Christopher's authority to bind Pine Plantation under the circumstances presented here would be directly contrary to the LLC Act, the requirements of which Pine Plantation was aware of given that it incorporated the Act into its Operating Agreement.

The cases relied on by Pine Plantation are distinguishable. Pine Plantation relies on *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 832-33, 691 S.E.2d 852, 853 (2010) in which the Georgia Supreme Court held that a genuine factual dispute regarding the third party's knowledge precluded summary judgment *in favor of the LLC*.   *Ly*, 286 Ga. at 833, 691 S.E.2d at 853-54.   Unlike here, the third party in *Ly* knew of the manager approval requirement in the LLC's operating agreement.   *Id.* Nevertheless, the third party relied on a forged consent document purporting to show the managers' consent.   *Id*.   The *Ly* court assumes that on remand the third party must show that its reliance on the consent document was justified.   *Id*.   This makes sense because whether the third party was justified in relying on the forged consent document was relevant to determine the third party's actual knowledge under the statute.   But here no dispute exists regarding Guarantee Co.'s lack of actual

knowledge.  Pine Plantation recognizes that Redding did not know of the manager approval requirement in Pine Plantation's Operating Agreement.  And there are no other facts in the record tending to show that Guarantee Co. had knowledge.  The Court does not interpret *Ly* or any other Georgia authority to impose a duty on Guarantee Co. to investigate Christopher Opolka's representations of authority by reading Pine Plantation's Operating Agreement.[2]

Guarantee Co. presents undisputed evidence that Christopher Opolka held himself out as an agent of Pine Plantation and that Guarantee Co. had no indication that he lacked the authority to bind Pine Plantation to the Indemnity Agreement.  Accordingly, based on the undisputed evidence, he acted as an agent of Pine Plantation when he executed the Indemnity Agreement.  Whether he was an "actual" or an "apparent" agent does not matter.  He clearly had the legal authority to bind Pine Plantation. Accordingly, Guarantee Co. is entitled to a finding as a matter of law that Pine Plantation is bound by the Indemnity Agreement.

B.  Pine Plantation's Breach of the Indemnity Agreement

The next question is whether Pine Plantation breached the Indemnity Agreement.  To establish a breach of contract, Guarantee Co. must establish: (1) an enforceable agreement; (2)

---

[2] Given that Guarantee Co.'s claim is not one for fraud, the fraud cases cited by Pine Plantation are inapposite.

breach of that agreement; and (3) damages as a result of that breach. *Broughton v. Johnson,* 247 Ga. App. 819, 819, 545 S.E.2d 370, 371 (2001). Georgia courts "consistently [] up[hold] the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds." *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627, 600 S.E.2d 712, 715 (2004). To determine whether Pine Plantation breached its obligations under the Indemnity Agreement, the Court "appl[ies] the ordinary rules of contract construction." *Id.* However, "[n]o construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." *Id.* (quoting *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555, 583 S.E.2d 220, 223 (2003)).

It is clear that Pine Plantation breached the indemnity provision as a matter of law. The relevant provision states that the "UNDERSIGNED shall indemnify [Guarantee Co.] and hold it harmless" for any damages "which [Guarantee Co.] may sustain . . . by reason of having executed . . . any BOND or BONDS" on behalf of Gary's Grading. Indemnity Agreement ¶ 4. Guarantee Co. "may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED." Indemnity Agreement ¶ 7. The

15

Court finds this language unambiguous and therefore it must be strictly enforced.  *See Anderson*, 267 Ga. App. at 627, 600 S.E.2d at 715 (affirming summary judgment for a surety company based on similar language in an indemnity agreement).

It is undisputed that Guarantee Co. received several claims against the Gary's Grading bonds and chose to settle many of the claims with payments to the claimants.  Pine Plantation does not argue that any of these settlements were made in bad faith or an abuse of discretion.  *See Nguyen*, 261 Ga. App. at 556, 583 S.E.2d at 224 ("[W]here a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary, or capricious so as to amount to an abuse of that discretion." (alteration in original) (quoting *MacDougald Constr. Co., v. State Highway Dep't*, 125 Ga. App. 591, 593, 188 S.E.2d 405, 406 (1972))).  Yet Pine Plantation has not indemnified Guarantee Co. for its damages.  Thus, Pine Plantation breached this provision as a matter of law.

It is also undisputed that Pine Plantation breached the collateral security provision.  The Indemnity Agreement provides that "if Guarantee Co. "reasonabl[y] belie[ves] that it may incur a loss" from the Gary's Grading bonds, Guarantee Co. may demand, and Pine Plantation "shall deliver over to [Guarantee Co.] collateral security acceptable to [Guarantee Co.] to cover

any contingent losses." Indemnity Agreement ¶ 5. This language unambiguously requires Pine Plantation to post collateral at Guarantee Co.'s discretion. Here, Zabek states that Guarantee Co.'s records indicate that it will incur additional losses on the Gary's Grading bonds. Zabek Aff. ¶ 16. Guarantee Co. demanded that Pine Plantation post collateral to cover the potential losses. Pine Plantation has failed to present any evidence that the demand was made in bad faith and has not posted collateral. Accordingly, the Court grants Guarantee Co.'s motion for summary judgment as to Pine Plantation's liability for breach of the Indemnity Agreement.

## II. Guarantee Co.'s Remedies

### A. Damages

As previously explained, Guarantee Co. is entitled to default judgment against the defaulting Defendants as to the existence of their liability. Guarantee Co. is also entitled to summary judgment as to the liability of Pine Plantation. But, as explained more fully below, the Court is troubled by the evidence presented by Guarantee Co. in support of the amount of its damages. While it is clear that Guarantee Co. has suffered damages that are recoverable against the defaulting Defendants and Pine Plantation, the evidence in the present record does not permit the Court to calculate the amount of those damages with a reasonable degree of certainty. Accordingly, the Court cannot

at this time grant Guarantee Co.'s motion for default judgment and summary judgment regarding the amount of the judgment.

The Indemnity Agreement provides the method for calculating damages:

> Vouchers or other evidence of payments made by [Guarantee Co.] shall be prima facie evidence of the fact and amount of the liability of the UNDERSIGNED to [Guarantee Co.].

Indemnity Agreement ¶ 7. Remarkably, Guarantee Co. fails to offer the type of evidence contemplated by the Indemnity Agreement. Instead, counsel provides an affidavit along with a stack of documents that are largely indecipherable. Specifically, Guarantee Co. submits the affidavit of Christina Zabek who states that to date Guarantee Co. has paid $2,865,073.92 in settlements to claimants on the Gary's Grading bonds. Zabek Aff. ¶ 13. Zabek cites Exhibits 2 and 4, attached to her affidavit as evidence of payments totaling this amount. But these exhibits do not clearly reflect these payments.

Exhibit 2 contains an "Exposure Summary Analysis" that lists $2,871,834.17 in settlement damages, not $2,865,073.92 as Zabek claims. Exhibit 4 contains over three hundred pages of disorganized documents that Zabek asserts are business records, including copies of Guarantee Co.'s correspondence with claimants, copies of settlement agreements, and copies of checks from Guarantee Co. to claimants. The Court has tried to

18

reconcile the disorganized collection of documents with Zabek's statement that these records somehow add up to $2,865,073.92 in settlement claims, but has been unable to do so. Thus, the Court finds that Guarantee Co. has failed to establish the amount of its damages as a matter of law for purposes of summary judgment and has failed to establish those damages with reasonable certainty in support of default judgment. Accordingly, the Court at this time denies Guarantee Co.'s motion for summary judgment and default judgment as to $2,865,073.92 in damages.

Guarantee Co. shall have seven days from this Order to file a more coherent evidentiary basis supporting the amount of damages. This evidence should include a chart listing each settlement claim that Guarantee Co. has paid. The chart should include the following information about each claim: the amount paid; the date the payment was made; the claimant that received the payment; and the specific page or pages of Exhibit 4 that are evidence that Guarantee Co. made the payment. If Guarantee Co. seeks attorney fees or additional expenses with the settlement payments, the expenses must be listed in the chart and must be supported by page citations to Exhibit 4 or an affiant with personal knowledge that the expenses were paid. Defendants will have seven days from the date of Guarantee Co.'s filing to respond to Guarantee Co.'s evidence.

B.   Specific Performance

The appropriate remedy for the failure to post collateral is specific performance.  Specific performance may be granted when "the damages recoverable at law would not be an adequate compensation for nonperformance."  O.C.G.A. § 23-2-130.  It is an equitable remedy and it may not be granted "unless strictly equitable and just." *Kirkley v. Jones*, 250 Ga. App. 113, 115-16, 550 S.E.2d 686, 690 (2001).  "A contract upon which specific performance is sought must be certain, definite, and clear; and so precise in its terms that neither party can reasonably misunderstand it." *Hibbard v. McMillan*, 284 Ga. App. 753, 755, 645 S.E.2d 356, 359 (2007) (quoting *Firstline Corp. v. Valdosta-Lowndes Cty. Indus. Auth.*, 236 Ga. App. 432, 434, 511 S.E.2d 538, 541 (1999)).

Generally, surety companies are entitled to specific performance for breach of collateral security provisions. *Hanover Ins. Co. v. Holley Constr. Co. & Assocs., Inc.*, No. 4:11-CV-41(CDL), 2012 WL 398135, at *5 (M.D. Ga. Feb. 7, 2012). Here, Guarantee Co. "'bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond[s]' and the availability of damages after trial would not protect [Guarantee Co.] from a present risk of exposure." *Id.* (quoting *Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*, No. 4:10-CV1160-CAS, 2011 WL

3439129, at *5-*6 (E.D. Mo. Aug. 5, 2011)).  Thus, the Court concludes that Guarantee Co. has no adequate remedy at law for breach of the collateral security provision.

The Court also finds that the collateral security provision's terms are such that no party could reasonably misunderstand them.  The provision unambiguously places discretion with Guarantee Co. to demand collateral when it "reasonabl[y] belie[ves]" it will incur losses and to determine the amount it finds "acceptable."  Indemnity Agreement ¶ 5. Defendants could not reasonably misunderstand Guarantee Co.'s rights or their obligations.  Accordingly, the Court finds that specific performance is equitable and just here, and the Court orders the defaulting Defendants and Pine Plantation to post $1,133,371.99 in collateral.

Defendants do not dispute the amount of collateral necessary to protect Guarantee Co. as contemplated by the Indemnity Agreement.  But Pine Plantation appears to argue that requiring it to post collateral would not be equitable and just because there is a fact dispute regarding whether Pine Plantation has sufficient assets to do so.  The Court finds this argument unpersuasive.  While Pine Plantation's financial viability may be disputed, that fact is not material to whether Pine Plantation is obligated to post collateral under the Indemnity Agreement.  Pine Plantation does not assert any

ambiguity or misunderstanding regarding the terms of the collateral security provision. And Pine Plantation does not provide any authority for its assertion that financial hardship should relieve it from its unambiguous contractual obligation. Accordingly, the Court grants Guarantee Co.'s motion for summary judgment on its specific performance claim. The Court further finds that the present record supports specific performance as the appropriate remedy against the defaulting Defendants.

CONCLUSION

As to Pine Plantation, the Court grants Guarantee Co.'s motion for summary judgment regarding liability for breach of the indemnity provision, but denies the motion as to damages (ECF No. 42). The Court also grants Guarantee Co.'s motion for summary judgment regarding breach of the collateral security provision and grants specific performance requiring Pine Plantation to post $1,133,371.99 in collateral.

As to the defaulting Defendants, Guarantee Co. is entitled to default judgment that Defendants are liable for breach of the Indemnity Agreement, but Guarantee Co. has not established its damages to a reasonable certainty. Guarantee Co. is also entitled to default judgment that requires the defaulting Defendants to post jointly with Pine Plantation $1,133,371.99 in collateral.

Pine Plantation and the defaulting Defendants shall post the collateral required by today's Order within 45 days of today.

The Court provides Guarantee Co. with an opportunity to file a supplemental brief in support of its claim for damages that includes competent, coherent evidence of its damages. That brief shall be filed within seven days of today. Defendants shall have seven days to respond to Guarantee Co.'s supplemental brief.

IT IS SO ORDERED, this 25th day of March, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA