IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

THE GUARANTEE COMPANY OF NORTH       *
AMERICA,
                                     *
        Plaintiff,
                                     *
vs.
                                     *        CASE NO. 3:15-CV-83 (CDL)
GARY'S GRADING & PIPELINE CO.,       *
INC., *et al.*,                      *

        Defendants.                  *

_____

                    O R D E R

     In the first trial of this action, the jury returned a
verdict in favor of Plaintiff against Pine Plantation, LLC in
the amount of $2,546,354.69 (ECF No. 77).  After the jury could
not reach a unanimous verdict as to the claim against Defendant
Gary G. Opolka, the Court declared a mistrial as to that claim,
and directed that final judgment be entered in favor of
Plaintiff on the claim against Pine Plantation and against
several Defendants who were in default (ECF No. 79).  Judgment
was subsequently entered by the Clerk.  (ECF No. 83)  The claim
against Gary G. Opolka remained pending for retrial.

     After the first trial, Defendants Gary G. Opolka and Pine
Plantation, LLC renewed their trial motions for judgment as a
matter of law (ECF No. 88).  The Court deferred ruling on those
motions until after the retrial of the claim against Gary G.

Opolka.   That  trial  has  now  been  completed,  and  the  jury
returned  a  verdict  in  favor  of  Gary  G.  Opolka  (ECF  No.  113).
Judgment  has  been  entered  in  his  favor  (ECF  No.  115).
Therefore,  Mr.  Opolka's  motion  for  judgment  as  a  matter  of  law
is  moot  and  shall  be  terminated.   Pine  Plantation's  motion  for
judgment  as  a  matter  of  law  regarding  the  first  trial  remains
pending.   As  explained  in  the  remainder  of  this  Order,  that
motion  (ECF  No.  88)  is  denied.

BACKGROUND

This  action  arises  from  a  construction  company's  failure  to
complete  various  projects  which  required  its  surety  to  step  in
and  make  payments  under  its  payment  and  performance  bonds.   That
surety,  The  Guarantee  Company  of  North  America  ("Guarantee
Co."),  sued  the  construction  company,  Gary's  Grading  &  Pipeline
Co.,  Inc.  ("Gary's  Grading"),  along  with  other  related  entities,
CGP  Equipment  Company,  Inc.  ("CGP  Equipment"),  Bold  Springs,  LLC
("Bold  Springs"),  Pine  Plantation,  LLC  ("Pine  Plantation"),  and
individuals,  Gary  Opolka  and  Christopher  Opolka.   Guarantee  Co.
claimed  that  Gary  Opolka  and  Christopher  Opolka  signed  an
Indemnity  Agreement  to  repay  Guarantee  Co.  for  any  payments  it
made  on  the  surety  bonds.   Guarantee  Co.  also  sought  specific
performance  of  a  provision  in  the  Indemnity  Agreement  that
requires  the  indemnitors  to  provide  additional  collateral
security  under  the  circumstances  presented  here.   Three  of  the

2

Defendants, Gary's Grading, CGP Equipment and Bold Springs, never answered Guarantee Co.'s complaint, and default judgments have been entered against them. Christopher Opolka has filed for protection under the bankruptcy laws, and thus this action is automatically stayed as to him.

The Court previously granted partial summary judgment in favor of Guarantee Co. and against Pine Plantation finding that Pine Plantation was bound by the Indemnity Agreement. The Court subsequently conducted a jury trial on Guarantee Co.'s claims against Pine Plantation and Gary G. Opolka with damages being the only issue to be decided as to the claim against Pine Plantation but with liability and damages to be decided as to the claim against Gary G. Opolka. As mentioned previously, that jury trial resulted in a verdict in favor of Guarantee Co. against Pine Plantation and a mistrial on the claim against Gary G. Opolka based on a hung jury. The Court scheduled a second trial for the claim against Mr. Opolka, and the jury returned a verdict in his favor finding that he did not sign or ratify the Indemnity Agreement.

After the first trial, Pine Plantation filed a motion renewing its motion for judgment as a matter of law that it had made during the first trial. In that motion, Pine Plantation focuses on the sufficiency of the evidence supporting the jury's verdict. But the Court also understands Pine Plantation to be

reasserting its previous position that the Court erred when it granted partial summary judgment and found as a matter of law that Pine Plantation was bound by and had breached the Indemnity Agreement.

## RENEWAL OF RULE 50 MOTION

During the first trial, Pine Plantation made a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure after Guarantee Co. rested its case and at the conclusion of all of the evidence. The Court deferred ruling on the motion and submitted the case to the jury subject to the Court's later deciding the legal question raised by the motion. Pine Plantation now renews that motion.

The issue presented by the motion is whether the jury had a legally sufficient evidentiary basis to award the damages it awarded to Guarantee Co. and against Pine Plantation. *See* Fed. R. Civ. P. 50(a) (prescribing this standard for judgment as a matter of law). Pine Plantation maintains that the Court should not have decided its liability as a matter of law at summary judgment and that the amount of damages found by the jury was not supported by admissible evidence. Having fully considered the record at trial and the evidentiary rulings objected to by Pine Plantation, the Court finds that sufficient admissible evidence was presented at trial to support the jury's award of damages. The Court further finds that a detailed

analysis of why this is so would not likely facilitate appellate review. The Court further finds that its previous summary judgment ruling was not erroneous and thus does not provide Pine Plantation with an argument for judgment as a matter of law or new trial. The Court does find, however, that further discussion of that issue in this Order may facilitate appellate review of the issue.

THE COURT'S PREVIOUS SUMMARY JUDGMENT ORDER

**I.   Factual Record at Summary Judgment**

The record for summary judgment was as follows.

Plaintiff Guarantee Co. is a Michigan surety company that issues payment and performance bonds on construction projects. At times relevant to this action, Gary's Grading was a Georgia construction company primarily operated by Christopher Opolka. Defs.' Resp. in Opp'n to Prelim. Inj. Attach. 2, Gary Opolka Aff. I ¶ 3, Oct. 28, 2015, ECF No. 27-2. Defendant Pine Plantation, a Georgia limited liability company, was co-owned and co-managed by Christopher Opolka and his two brothers, Gary Opolka and Peter Opolka, Jr. *Id.* ¶¶ 4 & 5; Def.'s Surreply in Opp'n to Pl.'s Mot. for Summ. J. Attach. 1, Peter Opolka, Jr. Aff. ¶¶ 2 & 3, ECF No. 53-1. Defendants CGP Equipment and Bold Springs are also Georgia entities.

The Pine Plantation Operating Agreement that governs the division of authority between the brothers provides:

> At any time when there is more than one Manager, no one Manager may take any action permitted to be taken by the Managers without agreement of the other Manager or Managers, or unless other approval requirements of the Managers are expressly set forth elsewhere in this Operating Agreement or the Georgia Act.

Pl.'s Mot. for Summ. J. Ex. C, Operating Agreement art. V § 5.01, ECF No. 42-5.

In 2012, Guarantee Co. contracted with Gary's Grading to provide payment and performance bonds for several construction projects in Georgia. In exchange for the Gary's Grading bonds, Christopher Opolka signed a General Agreement of Indemnification ("Indemnity Agreement") in favor of Guarantee Co. on behalf of himself, CGP Equipment, Bold Springs and Pine Plantation. Pl.'s Mot. for Prelim. Inj. Ex. 1, Indemnity Agreement 6-7, ECF No. 22-1. Gary Opolka's signature also appears on the Indemnity Agreement on behalf of himself and Gary's Grading. *Id.* According to Gary Opolka, however, he did not sign the Agreement and he did not give Christopher Opolka permission to sign the Agreement on behalf of their co-managed entity Pine Plantation. Gary Opolka Aff. I ¶¶ 8 & 9. Gary Opolka believes that Christopher Opolka forged his signature on the Agreement. *Id.*

John Redding, the Guarantee Co. employee responsible for issuing the Gary's Grading bonds in 2012, believed that all the signatures on the Indemnity Agreement were genuine. Redding states that he "had no reason to distrust the authenticity of

the notarized signature[] of Gary Opolka." Pl.'s Reply in Supp.

of Summ. J. Ex. A, Redding Aff. ¶ 12, ECF No. 50-1. Redding

also had no concerns "as to Chris Opolka's authority to sign the

Indemnity Agreement on behalf of Pine Plantation." *Id.* ¶ 11.

The Indemnity Agreement provides the following indemnity

provision:

> The UNDERSIGNED shall indemnify [Guarantee Co.] and
> hold it harmless from and against all claims, damages,
> expenses, losses, costs, professional and consulting
> fees, disbursements, interests and expenses of every
> nature (including premiums and fees due for the
> issuance and continuance of any BOND or BONDS) which
> [Guarantee Co.] may sustain, incur or become liable
> for by reason of having executed or procured the
> execution of any BOND or BONDS, or by making any
> investigation of any matter concerning any BOND or
> BONDS, or by prosecuting or defending any action in
> connection with any BOND or BONDS, or by recovering
> any salvage or enforcing this Agreement.

Indemnity Agreement ¶ 4. The Indemnity Agreement also gives

Guarantee Co. the right to settle any claims against the bonds:

> [Guarantee Co.] may settle or compromise any claim,
> liability, demand, suit or judgment upon any BOND or
> BONDS executed or procured by it, and any such
> settlement or compromise shall be binding upon the
> UNDERSIGNED. Vouchers or other evidence of payments
> made by [Guarantee Co.] shall be prima facie evidence
> of the fact and amount of the liability of the
> UNDERSIGNED to [Guarantee Co.].

*Id.* ¶ 7. And it contains a collateral security provision:

> Upon [Guarantee Co.]'s reasonable belief that it may
> incur a loss on a BOND or BONDS, [Guarantee Co.] may
> demand and, upon [Guarantee Co.]'s demand, the
> UNDERSIGNED shall deliver over to [Guarantee Co.]
> collateral security acceptable to [Guarantee Co.] to
> cover any contingent losses and any subsequent

> increase thereof. {Guarantee Co.} shall return to the UNDERSIGNED any unused portion of collateral upon termination of the liability of [Guarantee Co.] on all BONDS and satisfaction by the UNDERSIGNED of [their] obligations to [Guarantee Co.] under this Agreement.

*Id*. ¶ 5.

Several of the subcontractors and suppliers for Gary's Grading submitted claims to Guarantee Co. against the Gary's Grading bonds. Guarantee Co. paid substantial amounts to settle various bond claims. Pl.'s Mot. for Summ. J. Ex. A, Zabek Aff. ¶ 13, ECF No. 42-2. Guarantee Co. demanded that Defendants indemnify it for its losses and post collateral pursuant to the Indemnity Agreement. Defendants failed to indemnify Guarantee Co. or post collateral.

## II.  Summary Judgment Rationale

When subject matter jurisdiction is based on diversity, the Court applies the forum state's choice-of-law rules to determine which law governs the action. *Bituminous Cas. Corp. v. Advanced Adhesive Tech*., *Inc*., 73 F.3d 335, 337 (11th Cir. 1996). Under Georgia's choice-of-law rules, "[contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they are made . . . ." *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984) (first alteration in original) (quoting *Tillman v. Gibson*, 44 Ga. App. 440, 442-43, 161 S.E.2d 630, 632 (1931)). Here, there is no indication that the Indemnity Agreement was made in a state

other than Georgia, "and the parties seem to agree that substantive Georgia law applies because almost all of the cases cited in their briefs discuss Georgia law." *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 669 (11th Cir. 2012) (per curiam). Accordingly, the Court applies Georgia law.

It is well established under Georgia law that "an act done by an agent in excess of his authority does not bind the principal . . . ." *Gaulding v. Courts*, 90 Ga. App. 472, 480, 83 S.E.2d 288, 294 (1954). Here, Pine Plantation argues that Christopher Opolka exceeded his authority by signing the Indemnity Agreement on its behalf and, therefore, that Pine Plantation is not bound by the Agreement. Guarantee Co. responds that Christopher Opolka had actual authority to bind Pine Plantation to the Indemnity Agreement, and even if he did not have actual authority, he certainly acted with apparent authority.

The Pine Plantation Operating Agreement provides that one co-manager may not unilaterally bind Pine Plantation "without agreement of the other Manager or Managers, *or unless other approval requirements of the Managers are expressly set forth elsewhere in this Operating Agreement or the Georgia Act*." Operating Agreement art. V § 5.01 (emphasis added). Pine Plantation ignores the phrase beginning with "unless" and argues

that Pine Plantation can only be bound if all the managers concur.  This interpretation disregards the plain language of the agreement which provides that all managers must agree, "unless . . . other approval requirements are expressly set forth in . . . the Georgia Act."  "The Georgia Act" clearly refers to the Georgia Limited Liability Company Act.  *Id*. art. I, at 3 (defining "Georgia Act" as the "Georgia Limited Liability Company Act").  And that Act provides that every manager of an LLC is an agent of the LLC with a limited exception if two requirements are met:

> Every manager is an agent of the limited liability company for the purpose of its business and affairs, and the act of any manager, including, but not limited to, the execution in the name of the limited liability company of any instrument for apparently carrying on in the usual way the business and affairs of the limited liability company of which he or she is a manager, binds the limited liability company, unless the manager so acting has in fact no authority to act for the limited liability company in the particular matter, and the person with whom he or she is dealing has knowledge of the fact that the manager has no such authority.

O.C.G.A. § 14-11-301(b)(2).  The Act also provides:

> No act of a manager or member in contravention of a restriction on authority shall bind the limited liability company to persons having knowledge of the restriction.

O.C.G.A. § 14-11-301(d).

Here, there is no dispute that Christopher Opolka was a manager of Pine Plantation.  Nor does Pine Plantation dispute

that Christopher Opolka was "apparently carrying on in the usual way the business and affairs of [Pine Plantation]" when he signed the Indemnity Agreement.   O.C.G.A. § 14-11-301(b)(2). Thus, Pine Plantation is bound under the Act unless: "[1] the manager so acting has in fact no authority to act for the limited liability company in the particular matter, and [2] the person with whom he or she is dealing has knowledge of the fact that the manager has no such authority."  *Id.*

Even if Christopher Opolka had "no authority to act for [Pine Plantation] in [signing the Indemnity Agreement]," Guarantee Co. presents undisputed evidence that it had no "knowledge of the fact that [Christopher] ha[d] no such authority."  After reviewing the underwriting documents for the Gary's Grading bonds in 2012, Guarantee Co. underwriter Redding had no concerns "as to Chris Opolka's authority to sign the Indemnity Agreement on behalf of Pine Plantation."  Redding Aff. ¶ 11.  Redding also "had no reason to distrust the authenticity of the notarized signature[] of Gary Opolka" on the Indemnity Agreement.  *Id.* ¶ 12.  And Redding had never seen Pine Plantation's Operating Agreement.  Def.'s Surreply Attach. 4, Redding Dep. 80:1-2, ECF No. 53-4.  Pine Plantation points to no evidence from which a reasonable jury could conclude that Guarantee Co. knew that Christopher Opolka had no authority to act on behalf of Pine Plantation.

Instead of producing evidence of a factual dispute on Guarantee Co.'s knowledge, Pine Plantation argues that Guarantee Co. did not do enough to verify that Christopher had the requisite authority to act on behalf of Pine Plantation.  Pine Plantation presumably maintains that Guarantee Co. should have asked to review the Operating Agreement.  But Guarantee Co. had no reason to do so.  It had been dealing with Christopher Opolka with no indication that he did not possess the authority to act on behalf of Pine Plantation.  While a review of the Operating Agreement may have created some concern, the Agreement also provided that the agreement of all the managers was not the exclusive means for Pine Plantation to act given the language in the Agreement that makes an exception if the Georgia LLC Act provides otherwise.  To invalidate Christopher's authority to bind Pine Plantation under the circumstances presented here would be directly contrary to the LLC Act, the requirements of which Pine Plantation was aware of given that it incorporated the Act into its Operating Agreement.

The cases relied on by Pine Plantation are distinguishable. Pine Plantation relies on *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 832-33, 691 S.E.2d 852, 853 (2010) in which the Georgia Supreme Court held that a genuine factual dispute regarding the third party's knowledge precluded summary judgment *in favor of the LLC*.  *Ly*, 286 Ga. at 833, 691 S.E.2d at 853-54.  Unlike

here, the third party in *Ly* knew of the manager approval requirement in the LLC's operating agreement. *Id.* Nevertheless, the third party relied on a forged consent document purporting to show the managers' consent. *Id.* The *Ly* court assumes that on remand the third party must show that its reliance on the consent document was justified. *Id.* This makes sense because whether the third party was justified in relying on the forged consent document was relevant to determine the third party's actual knowledge under the statute. But here no dispute exists regarding Guarantee Co.'s lack of actual knowledge. Pine Plantation recognizes that Redding did not know of the manager approval requirement in Pine Plantation's Operating Agreement. And there are no other facts in the record tending to show that Guarantee Co. had knowledge. The Court does not interpret *Ly* or any other Georgia authority to impose a duty on Guarantee Co. to investigate Christopher Opolka's representations of authority by reading Pine Plantation's Operating Agreement.[1]

Guarantee Co. presents undisputed evidence that Christopher Opolka held himself out as an agent of Pine Plantation and that Guarantee Co. had no indication that he lacked the authority to bind Pine Plantation to the Indemnity Agreement. Accordingly,

---

[1] Given that Guarantee Co.'s claim is not one for fraud, the fraud cases cited by Pine Plantation are inapposite.

based on the undisputed evidence, he acted as an agent of Pine Plantation when he executed the Indemnity Agreement.  Whether he was an "actual" or an "apparent" agent does not matter.  He clearly had the legal authority to bind Pine Plantation. Accordingly, Guarantee Co. is entitled to a finding as a matter of law that Pine Plantation is bound by the Indemnity Agreement.

The next question is whether Pine Plantation breached the Indemnity Agreement.  To establish a breach of contract, Guarantee Co. must establish: (1) an enforceable agreement; (2) breach of that agreement; and (3) damages as a result of that breach.  *Broughton v. Johnson,* 247 Ga. App. 819, 819, 545 S.E.2d 370, 371 (2001).  Georgia courts "consistently [] up[hold] the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds."  *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627, 600 S.E.2d 712, 715 (2004).  To determine whether Pine Plantation breached its obligations under the Indemnity Agreement, the Court "appl[ies] the ordinary rules of contract construction."  *Id.*  However, "[n]o construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation."  *Id.* (quoting *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555, 583 S.E.2d 220, 223 (2003)).

14

It is clear that Pine Plantation breached the indemnity provision as a matter of law.  The relevant provision states that the "UNDERSIGNED shall indemnify [Guarantee Co.] and hold it harmless" for any damages "which [Guarantee Co.] may sustain . . . by reason of having executed . . . any BOND or BONDS" on behalf of Gary's Grading.  Indemnity Agreement ¶ 4. Guarantee Co. "may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED."  Indemnity Agreement ¶ 7.  The Court finds this language unambiguous and therefore it must be strictly enforced.  *See Anderson*, 267 Ga. App. at 624-25, 600 S.E.2d at 713-14 (affirming summary judgment for a surety company based on similar language in an indemnity agreement).

It is undisputed that Guarantee Co. received several claims against the Gary's Grading bonds and chose to settle many of the claims with payments to the claimants.  Pine Plantation does not argue that any of these settlements were made in bad faith or an abuse of discretion.  *See Nguyen*, 261 Ga. App. at 555, 583 S.E.2d at 223 ("[W]here a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary, or capricious so as to amount to an abuse of that discretion." (alteration in original) (quoting *MacDougald Constr. Co., v.*

*State Highway Dep't*, 125 Ga. App. 591, 593, 188 S.E.2d 405, 406 (1972))).  Yet Pine Plantation has not indemnified Guarantee Co. for its damages.  Thus, Pine Plantation breached this provision as a matter of law.

It is also undisputed that Pine Plantation breached the collateral security provision.  The Indemnity Agreement provides that "if Guarantee Co. "reasonabl[y] belie[ves] that it may incur a loss" from the Gary's Grading bonds, Guarantee Co. may demand, and Pine Plantation "shall deliver over to [Guarantee Co.] collateral security acceptable to [Guarantee Co.] to cover any contingent losses."  Indemnity Agreement ¶ 5.  This language unambiguously requires Pine Plantation to post collateral at Guarantee Co.'s discretion.  Here, Zabek states that Guarantee Co.'s records indicate that it will incur additional losses on the Gary's Grading bonds.  Zabek Aff. ¶ 16.  Guarantee Co. demanded that Pine Plantation post collateral to cover the potential losses.  Pine Plantation has failed to present any evidence that the demand was made in bad faith and has not posted collateral.

Based on the foregoing, the Court granted partial summary judgment in favor of Guarantee Co. on its claims against Pine Plantation and found as a matter of law that Pine Plantation was bound by the Indemnity Agreement and had breached it.  The Court found, however, that a jury question existed as to the amount of

16

Guarantee Co.'s damages and denied summary judgment as to damages. That issue was subsequently tried by a jury which returned a verdict awarding damages to Guarantee Co. and against Pine Plantation. The Court confirms the correctness of its prior rulings.

CONCLUSION

The Court's partial summary judgment ruling finding that Pine Plantation was bound by and breached the indemnity agreement with Guarantee Co. was not erroneous, and therefore, the Court declines to reconsider that ruling. The jury verdict awarding damages to Guarantee Co. against Pine Plantation was fully supported by evidence that was admissible under the Federal Rules of Evidence. Accordingly, Pine Plantation's renewed motion for judgment as a matter of law (ECF No. 88) is denied. The jury verdict was not against the weight of the evidence, and Pine Plantation is also not entitled to a new trial.[2]

---

[2] Given the somewhat complicated procedural posture of this case with several defendants, two separate trials, and an interlocutory summary judgment order, the Court finds it appropriate to clarify that all claims in this action have now been finally determined except for the claims against Christopher Opolka. And the claims against Christopher Opolka have been stayed due to his pending bankruptcy proceedings. Accordingly, the judgments in this case should be appealable at this time, and if for any reason they are found not to be appealable as a matter of right, the Court finds that no legitimate reason exists to deny a permissive appeal and certifies that an appeal should be permitted at this time.

IT IS SO ORDERED, this 16th day of August, 2016.

                              S/Clay D. Land
                              _____
                              CLAY D. LAND
                              CHIEF U.S. DISTRICT COURT JUDGE
                              MIDDLE DISTRICT OF GEORGIA